## STATE *ex rel.* TUCKER v. DAVIS *et al.*

No. A-1678.  Opinion Filed March 29, 1913.

(130 Pac. 962.)

1.  WITNESSES—Attorney and Client—Person Confined—Private Consultation—Courts—Duty to Control—Executive Officers. (a) Where a person is confined in jail pending a trial upon a criminal prosecution, he has the right to have an opportunity to consult freely with his counsel without having any person present to hear what

passes between them, whose presence is objectionable to such defendant.

(b) It is the duty of officers having custody of persons charged with the commission of crime to afford them a reasonable opportunity to privately consult their attorneys, and no officer has the right to be present and hear what is said during such consultation; but the officers must take such precautions as may be necessary, according to the circumstances of each case, to prevent the escape of such prisoners.

(c) It is the duty of the trial courts of Oklahoma to make such orders as will secure to every person imprisoned upon an accusation of crime a reasonable opportunity to consult privately and freely with his counsel, without let or hindrance from any sheriff, jailer, or other officer.

(d) As to just when and where consultations between prisoners and their attorneys may be had will vary with the circumstances of each case, within the discretion of the officer having the custody of such prisoner; but this discretion is subject to the review of the courts, and it must not be arbitrarily used.

2. CONTEMPT—Courts—Criminal Court of Appeals—Jurisdiction—Powers—Enforcement of Judgment by Executive Officers. (a) The Criminal Court of Appeals is charged with the duty of seeing that we have a uniform system of criminal jurisprudence in Oklahoma, and it is the court of last resort and the supreme arbitrator for the settlement of all questions relating to criminal law in this state.

(b) The Criminal Court of Appeals, independent of authority granted by statute, has the inherent power to enforce obedience to its orders by contempt proceedings. Such power is essential to the due administration of justice.

(c) It is the duty of all officers of the state to render unquestioning obedience to the judgments of the courts. If the courts are in error, they alone have the power to correct such errors.

(Syllabus by the Court.)

Contempt proceedings by the State, on the relation of H. S. Tucker, against Barney Davis and another. Judgment for relator.

Owing to the disposition made of this case, it is not necessary to make more than a condensed statement of the facts involved. H. S. Tucker was confined as a prisoner in the county jail of Custer county, Okla., upon a charge of rape pending against him in the superior court of said county. He presented an application to the Criminal Court of Appeals, in which it appears that, being unable to employ counsel to conduct his de-

fense, the judge of said superior court had appointed T. B. Norfleet and P. S. Hillman, members of the Custer county bar, to defend him; that, owing to the gravity of the charge pending against said Tucker, it was necessary that he should have an opportunity to confer privately and fully with his said attorneys with reference to his defense in this case, but that Barney Davis, sheriff of Custer county, and W. M. Van Bibber, jailer of said county, refused to permit the said Tucker to confer with his said counsel, except in the presence of said sheriff or jailer. It was further made to appear that there was no suitable place in the jail at which a private conference could be had, but that some room might be selected in the courthouse, which was adjacent to the jail, in which such private conference could be had. It was further made to appear that Hon. J. W. Lawter, judge of the superior court of Custer county, was absent from the county, and therefore could not afford the relief desired. Upon this showing the Criminal Court of Appeals issued an order addressed to said sheriff and said jailer of said Custer county, Okla., ordering and directing that they at any reasonable time, upon the request of his said attorneys of record, should take. said H. S. Tucker from the jail to some room in the courthouse of said county, to be selected by said officer or officers, and that the said H. S. Tucker be there permitted to consult privately with said attorneys. A copy of said order was served upon both the sheriff and jailer of said Custer county. It was further made to appear to the court that after service of such order, and in total disobedience thereof, said sheriff and said jailer of Custer county refused to permit the said Tucker to privately consult his said attorneys as directed in said order, although so requested to do. Thereupon a citation was addressed to both of said officers, requiring them to appear before the Criminal Court of Appeals and show what cause, if any, they had for disobeying said order, and why they should not be punished for contempt. The matter coming on to be heard, both of said officers appeared and denied that they had disobeyed the said order of the court. A great deal of testimony

was offered by both sides, a detailed statement of which is unnecessary.

*Thomas W. Conner, P. S. Hillman,* and *Thomas B. Norfleet,* for relator.

*Phillips & Mills* and *A. C. Cruce,* for respondents.

FURMAN, J. (after stating the facts as above). First. It would be a cheap subterfuge of and shameless mockery upon justice for the state to put a man on trial in its courts charged with an offense which involves his life, liberty, or character, and then place him in such a position that he could not prepare to make his defense. It would be just as reasonable to place shackles upon a man's limbs, and then tell him that it is his right and duty to defend himself against an impending physical assault. If the right of defense exists, it includes and carries with it the right of such freedom of action as is essential and necessary to make such defense complete. In fact, there can be no such thing as a legal trial, unless both parties are allowed a reasonable opportunity to prepare to vindicate their rights. This is so fundamentally just, and is so highly prized by the people of Oklahoma, that it is embodied, not only in our statute law, but is further safeguarded and rendered inviolate by a number of constitutional provisions. Section 15, Williams' Const. of Okla., in express terms declares that no person shall be deprived of life, liberty, or property without due process of law. There can be no such thing as due process of law where a party to a case has been deprived of an opportunity to prepare for trial. Section 28, Williams' Const. of Okla., provides that in all criminal prosecutions the accused shall have a right to a speedy public trial by an impartial jury of the county in which the crime shall have been committed; that he shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining wit-

nesses in his own behalf; and that he shall have the right to be heard by himself and by counsel.

Due process of law would be a libel on justice if it did not carry with it the absolute right of preparation for trial. The right to be informed of the nature and cause of the accusation against him, and have a copy thereof, would be only so much idle buffoonery if the accused was not allowed to prepare to defend himself. All of these rights would amount to but little if the accused did not also have the right to be represented by counsel who was learned in the law and trained in the matter of presenting cases in court. These principles are not only embodied in our Constitution, but they or similar provisions will be found in the Constitution of every state of the American Union and also in the Constitution of the United States. They therefore cannot be minimized, but constitute the fundamental and universal principles of American criminal law; and no Legislature or court can ignore or violate them. The absolute right of every defendant in a criminal case to be represented by counsel learned in the law was discussed and recognized by the unanimous decision of this court in the case of *Baker v. State, ante,* 130 Pac. 820, in an opinion by Judge Doyle, decided at the present term of the court. The right to be heard by counsel would, in the language of Saint Paul, 1 Cor. 13, 1, "become as sounding brass, or a tinkling cymbal," if it did not include the right to a full and confidential consultation with such counsel, with no other persons present to hear what was said. This is a material, substantial right, essential to justice.

Section 257, Comp. Laws 1909, (Rev. Laws, sec. 244), among other things, provides that it is the duty of an attorney and counselor at law "to maintain inviolate the confidence and at any peril to himself to preserve the secrets of his client." This is not only the statute law of our state, but it is also a settled principle of the common law. While this rule is rigidly enforced as between client and attorney, yet it does not extend to persons who may hear what passes between clients and their attorneys.

If clients disclose secrets to their attorneys in the presence of others, the law closes the mouths of the attorneys, and will not permit them to reveal secrets so disclosed; but no such inhibition is placed by law upon others present who may hear such secrets, unless such other persons are the helpers or assistants of such attorneys. Therefore, if parties in prison and charged with crime are compelled to consult their attorneys in the presence of an officer or officers of the law, the very object and purpose of the Constitution and of the statute would be defeated, because such officer or officers could testify as to any statements passing between such defendants and their attorneys, or could otherwise disclose such secrets against the will and to the injury of such defendant. This alone would render such consultations a miserable and contemptible farce. It therefore necessarily follows that it is the absolute right of parties charged with crime to consult privately with their attorneys, and that it is an illegal abridgment of this right for a sheriff, jailer, or other officer to deny to a defendant the right to consult his attorneys, except in the presence of such officer. We think that this question is too plain for argument, and that the statement of the proposition amounts to its demonstration.

This court has repeatedly held that fairness is an essential element in the trial of criminal cases in Oklahoma, and that unfairness and justice cannot be harmonized with each other, and that whenever it is made to appear that there was any unfairness in the trial of a criminal case such unfairness will be ground for reversal, unless it affirmatively appears from the record that it could not have materially affected a verdict of conviction.

It is the duty of officers having the custody of persons charged with crime to afford them a reasonable opportunity to privately consult with their attorneys, without having other persons present, taking such precautions as may be necessary, according to the circumstances of each case, to prevent the escape of such prisoner. It is therefore the duty of the trial courts of Oklahoma to make such orders as will secure to every

person imprisoned upon an accusation of crime a reasonable opportunity to consult privately and freely with his counsel, without let or hindrance from any sheriff, jailor, or other officer. As to what, when and where such consultations may be had may vary with circumstances, and is a matter within the discretion of the trial court, but this is not an arbitrary discretion, and it must not be so used; otherwise it may become the means of defeating justice.

It matters not what the officers may think of the guilt of a defendant, the law presumes that he is innocent until his guilt has been legally pronounced by an impartial jury in a fair trial. It matters not how humble, poor, or friendless he may be, or how strong and influential the feeling against him, it is his absolute right to have a fair opportunity to prepare for trial and to present his defense. The law is not hunting for victims or seeking to offer up vicarious atonements. Punishment should never be inflicted as such before a conviction, and there should be no conviction, unless it be legally established to the satisfaction of the jury, beyond a reasonable doubt, that the defendant is guilty of the crime charged against him. No attempt to railroad any man to the penitentiary or to the gallows, it matters not how guilty he may be, should for one moment be tolerated by any court. If a defendant cannot be convicted without denying him a reasonable opportunity to prepare for trial, and a fair trial, he should not be convicted at all. Any other rule would make a myth of justice and a snare and a delusion of courts.

Second. It would be difficult, if not impossible, to include in one general definition everything which constitutes contempt of court. Even if this were possible, it is not necessary to do so in this case; for the specific charge against respondents is a willful disregard and disobedience of the order of this court.

The Criminal Court of Appeals is the court of last resort in all criminal cases and for the settlement of all questions involving a construction of the criminal laws of Okla-

homa. This court is charged with the duty of seeing that we have a uniform system of criminal jurisprudence in the state. It would be utterly impossible for the court to discharge this duty, unless it has the power and the courage to protect its character and enforce obedience to its orders; otherwise its decisions would be a mere matter of advice or recommendation, which the subordinate courts and the officers of the state would be at liberty to follow or disregard at pleasure and the court itself would be a puerile, impotent, and contemptible thing, and its usefulness would be destroyed.

Article 4 of the Constitution of this state divides the state government into three separate, distinct, and co-ordinate departments, viz., the legislative, executive, and judicial. Sec. 50, Williams' Const. of Okla. By the express terms of the Constitution the Criminal Court of Appeals has exclusive appellate jurisdiction of all criminal cases. See sec. 187, Williams' Const. of Okla. That which is exclusive cannot be divided or shared, either in whole or in part, with any other person or tribunal or department of the state government. It therefore necessarily follows that the Criminal Court of Appeals is the supreme tribunal for the settlement of all questions relating to criminal law.

As to the powers of this court with reference to matters of criminal law, in the case of *State ex rel. Ikard v. Russell,* 33 Okla. 141, 124 Pac. 1092, the Supreme Court of Oklahoma said:

"It is the settled policy of this court to follow the construction given to criminal statutes by the Criminal Court of Appeals, since the enforcement of such statutes must be in accordance with such construction. *Ex parte Justus,* 26 Okla. 101, 110 Pac. 907; *Flood v. State ex rel.,* 27 Okla. 852, 113 Pac. 914; *Herndon v. Hammond, County Judge,* 28 Okla. 616, 115 Pac. 775."

Our decisions as to the criminal laws of this state are not only binding on every department of this state government, but they are also binding upon the Supreme Court of the United States, when nothing is involved of national authority.

Mr. Cooley, in his work on Constitutional Limitations, on page 31, says:

"But the same reason which requires that the final decision upon all questions of national jurisdiction should be left to the national courts will also hold the national courts bound to respect the decisions of the state courts upon all questions arising under the state Constitutions and laws, where nothing is involved of national authority, or of right under the Constitution, laws, or treaties of the United States, and to accept the state decisions as correct, and to follow them whenever the same questions arise in the national courts."

In *Beauregard v. New Orleans*, 18 How. 497, 502 (15 L. Ed. 462), Mr. Justice Campbell, speaking for the Supreme Court of the United States, says:

"The constitution of this court requires it to follow the laws of the several states as rules of decision wherever they apply. And the habit of the court has been to defer to the decisions of their judicial tribunals upon questions arising out of the common law of the state."

In *Bank of Hamilton v. Dudley's Lessee*, 2 Pet. 492, 524 (7 L. Ed. 496), it was argued that the exclusive power of state courts to construe legislative acts did not extend to the paramount law, so as to enable them to give efficacy to an act which was contrary to the state Constitution; but Marshall, C. J., speaking for the Supreme Court of the United States, said:

"We cannot admit this distinction. The judicial department of every government is the rightful expositor of its laws, and emphatically of its supreme law."

Again, in *Elmendorf v. Tailor*, 10 Wheat. 152, 159 (6. L. Ed. 289), the same eminent judge says:

"The judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government."

The opinions of the Criminal Court of Appeals of Oklahoma upon all questions of criminal law are binding upon the Supreme Court of the United States and the Supreme Court of this state, the Governor, and all state officers. Certainly, then, the sheriff and jailor of a county are without the slightest power or authority to disregard and disobey the orders of this court, and such disobedience and disregard of the orders of

this court constitute contempt of court. The power of the court to punish for contempt is clearly stated in the ninth volume of Cyc. p. 26, as follows:

"Independent of authority granted by statute, courts of record of superior jurisdiction, whether civil or criminal, possess inherent power to punish for contempt of court. Such power is essential to the due administration of justice, and the Legislature cannot take it away or abridge it."

Upon the hearing of this matter a great mass of conflicting testimony was introduced, and if the court was disposed to take a harsh and extreme view of the facts presented there is ample evidence in the record to justify the court in adjudging respondent guilty of contempt and in inflicting severe punishment therefor.

We are satisfied from the testimony that the respondent Davis did not render that ready and unquestioning obedience to the order of the court which it was his duty to do; that a personal difficulty took place between respondent Davis and the attorneys for relator in which some highly improper language was used; but it also appears from the testimony that the respondent Davis has been a fearless, zealous, and faithful officer, and that when he had time for reflection he complied with the order of the court.. We are inclined to the opinion that the hesitancy which respondent first manifested with reference to obeying the order of the court, and what he then said, was due more to the personal feeling existing between respondent and the attorneys for relator than to a disposition to defy this court. While this constitutes no defense to the charge of contempt, yet we feel that in justice we should take it into consideration in pronouncing judgment against respondent. This court has no desire to resort to arbitrary measures, especially against the peace officers of the state. All that it asks and requires is that its order shall be obeyed. No officer has the right to question the judgment of this court. If the court is in error as to any matter, an application must be made to the court for its correction. While the respondent Davis is

guilty of contempt for not rendering unquestioning obedience to the order of the court, yet, in view of his past character as an officer and the fact that before the matter was reported to the court he did comply with and obey said order, this court will suspend for the present pronouncing any judgment of punishment against him, except that he be directed to pay the costs of this proceeding, and when said costs are paid the clerk of this court is directed to enter a judgment discharging respondent Davis entirely in this proceeding.

The death of the respondent William Van .Bibber having been suggested to the court, this proceeding is abated as to him.

ARMSTRONG, P. J., and DOYLE, J., concur.