THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ALBERTO MURIEL, Defendant and Appellant.

No. 8337. Argued December 3, 1940.—Decided January 28, 1941.

*Luis Ríos Algarín* and *Víctor M. Marchan* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Juan Alberto Muriel, together with Juan Ramón González and Mariano Rosario Centeno, was prosecuted for the crime of murder committed on the person of Juan Santa. He asked to be tried separately and, upon being so tried, was found guilty by the jury, and the court sentenced him to life imprisonment.

He appealed and assigned five errors as committed by the lower court in denying his right to be assisted by counsel, in admitting certain evidence regarding his identification, in allowing the admission in evidence of a certain sheet of his criminal record, in instructing the jury, and in denying his motion for a new trial.

After a study of the record and of the briefs and arguments of the defense and the prosecuting attorney, we feel bound to reverse the judgment and to order the holding of a new trial.

For this purpose, we shall have only to consider the first of the errors assigned, which textually reads thus:

"1. The court erred in trying the accused some moments after having appointed an attorney to represent him, without giving the latter a reasonable opportunity to master the details of the case and

to prepare a proper defense of the accused, which is tantamount to denying to the accused the right to be assisted by counsel, and hence the court acted without jurisdiction in the proceedings.''

■ In order to understand well what occurred, and to conscientiously decide whether or not the trial court acted in accordance with the law and the decisions on the matter, it is necessary to transcribe in full what appears in the record regarding the incident. It is as follows:

"INCIDENT PRECEDING THE TRIAL OF THE CASE AGAINST JOSÉ ALBERTO MURIEL FOR MURDER.—Heard before Hon. Judge Romany.

"On April 25, 1939, the above-entitled case was called for trial and the following proceedings were had:

"Defendant Muriel: I have come to trial today, and I have had no attorney appointed for me by the court. I have been imprisoned for the last five months, and the other trial was for a friend of mine, and I have not prepared my defense, nor witnesses, nor anything.

"Attorney Belaval: I am going to look after one Ramón González, who asked me to defend him in the absence of Attorney Ortiz Toro.

"The Court: For whom was an attorney appointed?

"Mr. Belaval: For Juan Ramón González.

"Deputy Clerk: José Alberto Muriel stated that he would get an attorney.

"The Court: But before what judge was the arraignment made?

"Deputy Clerk: Before the Hon. Judge Roberto Todd. We understand that the attorney in the case is Mr. Casablanca.

"Defendant Muriel: I have not summoned my witnesses or any thing because I did not know when the trial was going to be held.

"The Court: The court will ask Attorney Belaval to take charge of the defense in this case.

"Mr. Belaval: I would have no objection, but there are three defendants prosecuted on the same charge and we do not know what is going to be the defense and I have already been informed from the standpoint of one of the defendants. I could hardly defend well another accused.

"Defendant Muriel: But my witnesses.

"The Court (addressing Muriel): You were notified on the 12th.

"Defendant Muriel: Yes, sir.

"The Court: And you did nothing.

"Defendant Muriel: You know that the three of us had been

notified to appear. It was not known which of the three was the one to be tried.

"The Court: You should have prepared for your trial. You were notified to appear here.

"Defendant Muriel: The last time I came and the witnesses came.

"The Court: You can state the names of your-witnesses and the court will send for them immediately.

"Defendant Muriel: Well you know that for a trial, to prepare my defense by my attorney . . . .

"The Court: You state that you do not have your witnesses? The Court will now appoint for you . . . .

"Defendant Muriel: Do you think that it will be sufficient time for the defense?

"The Court: Now under those conditions . . . .

"Defendant Muriel: I would ask the court for two or three days for a defense by my attorney.

"The Court: In these circumstances what does the district attorney suggest?

"District Attorney Franco: My suggestion is that counsel be assigned to represent the defendant in order to proceed with the trial. This defendant was notified on the 12th.

"The Court: But he has no attorney, and the Supreme Court has held that the attorney forms part of the court, and the court has no jurisdiction to hear a case if there is no attorney.

"District Attorney Franco: In order to acquire jurisdiction, I suggest that an attorney be appointed.

"The Court: Mr. Ríos Algarín, (who at that moment comes into the courtroom accompanied by the Marshal Sosa and who had been requested by the judge to take charge of this case), the court asks you to assist us in this case. Similarly as to Attorney Antonio Amadeo; the court asks both of you to help us in this. We need an attorney to complete the jurisdiction of the court in order that justice may be administered. Your mission will be to see that an impartial trial is had and that the rights of the accused are protected and the court asks you to look after this defendant.

"Attorney Ríos Algarín: In this case I am glad to accept the assignment to represent the defendant. I ask Your Honor that, as I have a case in another section of this court, a continuance be obtained somehow in that other case.

"Attorney Amadeo: I also accept.

"Attorney Ríos Algarín: I should like to see the information before beginning. And we ask for a recess of at least ten minutes.

"The Court: Yes, of course. A recess is ordered in this case for the purpose of enabling counsel to confer with the accused and in the meanwhile we will dispose of other business of the court.

"(After the recess, a jury was impaneled to try the defendant in the above-entitled case against José Alberto Muriel. Once the jury had been sworn and after the information had been read and the plea of not guilty by the defendant had been reiterated, the following occurred):

"Attorney Ríos Algarín: Before the evidence is introduced, I desire the record to show the consent or dissent of the defendant to my representing him. I would like to have the defendant himself, by his own statements, signify to Your Honor whether he is willing to accept our assignment.

"The Court: No, the defendant has the right to the assistance of an attorney but not one designated by him or the one he wishes, because then he could never be tried. The court has confidence in the intelligence and ability of the attorneys who represent the defendant and that is sufficient.

"(The marshal asked the defendant whether he had any witnesses, and he answered in the negative.)

"Then the introduction of the evidence was proceeded with, Dr. Antonio Navas being the first witness."

One month and eighteen days before the district judge acted in that manner, this Supreme Court in the *habeas corpus* proceedings instituted by *Ramón Fernández Laureano against the Warden of the Insular Penitentiary*, 54 P.R.R. 396, inspired by the holding of the Supreme Court of the United States in *John A. Johnson, Petitioner, v. Fred C. Zerbst, Warden*, 304 U.S. 458, had already emphasized the importance of the right which an accused has to be represented by an attorney before a court of justice, and had not only vigorously called attention to the duty of the latter in regard to the matter, but also discharged the petitioner who had been sentenced to a term of 20 years in the penitentiary, as he had been so sentenced without the trial court having provided him with the necessary legal assistance for his defense.

In said case it was finally held that: "All persons accused of a crime have a right to be represented by an attorney not only by the fifth and sixth amendments of the Federal Constitution, but also by section 2, paragraph 2, of our Organic Act and section 141 of the Code of Criminal Procedure, 1935 ed., and by the Act of March 9, 1905 (Comp. 6158–60)."

 It might be argued that in this case the trial court appointed an attorney to represent the accused, as he did, at the trial and therefore that it complied with its duty. However, the mere appointment, the mere representation, is not enough if the attendant circumstances show that the appointment was a bare formality and that the representation could not be effectual.

In the case of *Powell* v. *Alabama*, 287 U.S. 45, 57, decided over five years previous to the *Zerbst* case, *supra*, the Supreme Court of the United States, said:

"Nor do we think the situation was helped by what occurred on the morning of the trial. At that time, as appears from the colloquy printed above, Mr. Roddy stated to the court that he did not appear as counsel, but that he would like to appear along with counsel that the court might appoint; that he had not been given an opportunity to prepare the case; that he was not familiar with the procedure in Alabama, but merely came down as a friend of the people who were interested; that he thought the boys would be better off if he should step entirely out of the case. Mr. Moody, a member of the local bar, expressed a willingness to help Mr. Roddy in anything he could do under the circumstances. To this the court responded, 'All right, all the lawyers that will; of course I would not require a lawyer to appear if—.' And Mr. Moody continued, 'I am willing to do that for him as a member of the bar; I will go ahead and help do anything I can do.' With this dubious understanding, the trials immediately proceeded. The defendants, young ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them.

"It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No opportunity to do so was given. Defendants were immediately hurried to trial. Chief Justice Anderson, after disclaiming any intention to criticize harshly counsel who attempted to represent defendants at the trials, said: '. . . the record indicates that the appearance, was rather *pro forma* than zealous and active . . .' Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities. This conclusion finds ample support in the reasoning of an overwhelming array of state decisions, among which we cite the following: *Sheppard* v. *State,* 165 Ga. 460, 464; 141 S.E., 196; *Reliford* v. *State,* 140 Ga. 777; 79 S.E. 1128; *Mc-Arver* v. *State,* 114 Ga. 514; 40 S. E. 779; *Sánchez* v. *State,* 199 Ind. 235, 246; 157 N. E. 1; *Batchelor* v. *State,* 189 Ind. 69, 76; 125 N. E. 773; *Mitchell* v. *Commonwealth,* 225 Ky. 83; 7 S. W. (2d) 823; *Jackson* v. *Commonwealth,* 215 Ky. 800; 287 S. W. 17; *State* v. *Collins,* 104 La. 629; 29 So. 180; *State* v. *Pool,* 50 La. Ann. 449; 23 So. 503; *People ex rel. Burgess* v. *Risley,* 66 How. Pr. (N. Y.) 67; *State ex rel. Tucker* v. *Davis,* 9 Okla. Cr. 94; 130 Pac. 962; *Commonwealth* v. *O'Keefe,* 298 Pa. 169; 148 Atl. 73; *Shaffer* v. *Territory,* 14 Ariz. 329, 333; 127 Pac. 746.

"It is true that great and inexcusable delay in the enforcement of our criminal law is one of the grave evils of our time. Continuances are frequently granted for unnecessarily long periods of time, and delays incident to the disposition of motions for new trial and hearings upon appeal have come in many cases to be a distinct reproach to the administration of justice. The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob."

There is no doubt that the attendant circumstances of the *Powell* case, *supra,* were more dramatic than those of the

case at bar; but the applicable principles are essentially the same.

Here the defendant himself starts by stating that he had "come to trial" without an attorney appointed by the court; that he had been imprisoned for five months, that he had not prepared his defense, that he had no witnesses. The court calls upon Attorney Belaval. The latter says that he has to attend another codefendant, Juan Ramón González. The deputy clerk of the court states that Muriel had said "that he would get an attorney" and then, that he understood "that the attorney in the case was Mr. Casablanca." However, if that were so, Casablanca was not present, nor does it appear that he had been notified.

Muriel insists that he had not summoned his witnesses. The court again calls on Mr. Belaval and suggests that he take charge of the defense, and the attorney wisely answers: "I would have no objection, but there are three defendants under the same charge and we do not know what is going to be the defense, and I have already been informed from the standpoint of one of the defendants. I could hardly defend well another accused."

The defendant personally suggests "but my witnesses . . ." and the court says: "You were notified on the 12th." Muriel addressing the judge replied, "You know that three of us had been notified to appear. It was not known which of the three was the one to be tried."—From the record it appears that the three codefendants upon arraignment had asked to be tried separately.—And the court answers: "You should have prepared for your trial. You were notified to appear here." The court, after another statement from Muriel, suggests to him that he name his witnesses in order to subpoena them. The defendant intimates that the time was not sufficient and concludes by requesting that he be granted two or three days to prepare his defense.

Apparently the court hesitates and asks the district attorney for a suggestion as to what should be done "under those conditions," and the district attorney suggests that an attorney be appointed by the court and insists that the defendant has been notified on the 12th. The indecision in the mind of the court continues, doubtless under the influence of the recent decision of this court already cited, and the district attorney insists that in order to acquire jurisdiction it was sufficient to appoint an attorney; the court finally makes up its mind and appoints Attorney Ríos Algarín, who accepts. He says, "I should like to see the information, before beginning." To see the information, not the accused. It is the court who, upon ordering a recess does so "for the purpose of enabling counsel to confer with the accused."

The precise time elapsed does not appear, but it must have been necessarily very brief since the trial was proceeded with at the same sitting. Only a recess of ten minutes was requested. Nor does it appear whether the attorney conferred with the accused. It does appear that he stated that before any evidence was introduced he would like to have the record show a statement by the accused himself as to whether the latter was willing to accept his assignment as counsel, which request the court, suddenly and without making any inquiry, decided in the following terms:

"No, the defendant has the right to the assistance of an attorney but not one designated by him or the one he wishes, because then he could never be tried."

It is true that when a defendant does not himself engage the services of an attorney, he being insolvent, as in this case, he is not entitled to have the court appoint any particular attorney whose assignment is not within its ability or power to make; but the attitude taken by the court in this case, which is an extreme one, is untenable under the sound practice that should be followed. A defendant, for example, in San Juan has no right to ask that an attorney from

Mayagüez or from Ponce, be appointed to represent him when the San Juan attorney who may have been assigned to him is perfectly qualified; but a defendant is entitled to say something which might convince the court that the attorney appointed could not, or was not in a position, to defend him. He might suggest another attorney who would be ready to accept. To prevent the accused from acting in any way, as was done in this case, constitutes an abusive procedure which should not be tolerated.

From the above considerations, and even more eloquently from the record itself when directly weighed, without any outside comments, by reason and conscience, it is inferred and concluded that the court did not comply with its duty to provide the accused with the necessary legal assistance for his defense. It failed to place the attorney whom it appointed really in a position to fulfill his mission well and faithfully.

It is true that from a reading of the transcript it appears that Attorney Ríos Algarín did what he could during the trial to defend the accused; but there also appears his lack of familiarity with the antecedents of the prosecution, of contact with the accused and with the facts; and in this connection it seems fair and advisable to copy from the brief the following excerpts:

"Although the trial court in the case of the defendant-appellant, took into account the fact that the defendant was entitled to be represented by counsel, it nullified the legal assistance which it provided for the accused when it proceeded to hold the trial at a time when the attorneys designated, who did not know the defendant nor the facts of the case, had hardly ten minutes in which to prepare the defense of the accused. It is humanly impossible, Your Honors, for an attorney to be able in such a short time to prepare a defense worthy to be called such, without his action constituting a bare formal representation.

" 'The right of an accused to have his counsel prepare for trial is a substantial right and to deny counsel sufficient time to prepare defense is also the denial of a substantial right and under such

circumstances to have counsel appointed to represent him would be a meaningless formality and a barren right.

" 'A trial is a farce if the defendant be not given an opportunity to prepare for trial. (*Schields* v. *McMicking,* 23 Phil. Is. 526).

"Your defendant-appellant personally asked the court to be allowed at least three days in which to procure counsel and prepare his defense. The court did not accede to this and instantly appointed an attorney and proceeded with the case immediately.

"It might perhaps be argued that counsel could have asked for a continuance in order to prepare a better defense. The attorney who was appointed and who is one of the subscribers of this brief, failed to make such a request in order not to hinder the proceedings of the court or delay the administration of justice, but through a subsequent study of the case he has come to realize that had a reasonable time been made available to him in order to better understand the facts involved, he would have been able to present a better defense. But even supposing that through negligence or ignorance of the law counsel had failed to request said continuance, the defendant should not be made to suffer therefor, especially in a case involving life imprisonment and in which the choice of the attorney entirely depended upon the court and not upon the defendant. It is not just that all the burden of a possible mistake or inadvertence on the part of his attorney should fall upon the defendant, especially in a case where the surrounding circumstances are such as the ones present in the instant case."

The judgment appealed from must be reversed and a new trial ordered.