**UNITED STATES of America**

v.

**In the Matter of a WARRANT AUTHORIZING the INTERCEPTION OF ORAL COMMUNICATIONS WITHIN the PREMISES KNOWN AS the GROUND FLOOR OF 165 ATWELLS AVENUE, PROVIDENCE, RHODE ISLAND.**

**No. M81–18.**

United States District Court,
D. New Hampshire.

Aug. 12, 1981.

---

James H. Leavey, Sp. Asst. Atty. Gen., U. S. Dept. of Justice, Providence, R. I., for defendant.

Mark B. Gombiner, C. Vernon Mason, New York City, Nat. Conference of Black Lawyers, Robert A. Stein, Concord, N. H., for plaintiff.

ORDER ON MOTION FOR INSPECTION PURSUANT TO 18 U.S.C. § 2518(8)(d)

LOUGHLIN, District Judge.

The caption of this case is misleading for the purposes of this order. The movants are hereinafter referred to as the plaintiffs and the United States of America as defendant in order to avoid confusion. The plaintiffs request the court pursuant to 18 U.S.C. § 2518(8)(d) to make available to them or their counsel for inspection copies of the application for an order pursuant to 18 U.S.C. § 2518 authorizing the interception of oral communications within premises known as the ground floor of 165 Atwells Avenue, Providence, Rhode Island and the order authorizing said interception by Chief Judge Raymond J. Pettine of the United States District Court for the District of Rhode Island dated July 11, 1980. Chief Judge Raymond J. Pettine and Judge Francis J. Boyle have recused themselves and the case has been transferred to the United States District Court for the District of New Hampshire. See order of Frederick R. DeCesaris, United States Magistrate, District of Rhode Island, dated July 2, 1981.

Counsel for defendant voluntarily agreed at a court hearing on July 22, 1981 to furnish copies to plaintiffs' counsel and they received same.

In addition plaintiffs request all applications for extension of time of service of the inventory, any orders, relative thereto, all records, documents, logs, transcripts, tapes, memoranda or other memorializations of the interception of any oral communications pursuant to Chief Judge Raymond J. Pettine's order of July 11, 1980. The defendant opposes plaintiffs' requests for inspection.

Some of the factors are uncontroverted. The application for an order authorizing the interception of oral communications was signed by a Special Agent of the Federal Bureau of Investigation on July 11, 1980. The order authorizing interception or oral communications was signed the same day by Chief Judge Raymond J. Pettine.

It was not until May 29, 1981 that plaintiffs, John F. Ouimette and Dante Sciaria received notice from James H. Leavey, Special Attorney, United States Department of Justice of the following. A copy of form letter is excerpted.

Dear Mr.

In accordance with the Order of the Honorable Raymond J. Pettine, Chief Judge, United States District Court for the District of Rhode Island, and in accordance with the provisions of Title 18, United States Code, Section 2518(8)(d), you are hereby notified:

1. That on July 11, 1980, Chief Judge Pettine issued an order authorizing the interception of oral communications within the premises known as the ground floor, 165 Atwells Avenue, Providence, Rhode Island.

2. The order authorized interception for a period of thirty days.

3. Oral communications were intercepted during the periods July 16, 1980 through July 30, 1980 and August 1, 1980 through August 10, 1980.

Attorney Vincent Oddo of Providence, Rhode Island was the only witness who testified. He graduated from law school in 1980 and was admitted to the bar of the State of Rhode Island in November, 1980. He is associated with Attorney John F. Cicilline in the general practice of law at 165 Atwells Avenue, Providence, Rhode Island.

Attorney Oddo was not at the law offices during the period of the interception of the oral communications.

On June 2, 1981 two or three letters similar to the Ouimette and Sciaria letters were delivered to him between 10 and 11 A.M.

An agreement was made between representatives of the Federal Bureau of Investigation and Attorney Cicilline that thirty letters more or less would be delivered the following day, June 3, 1981 to clients who, to use the vernacular whose communications had been bugged during the intercept period.

A half hour prior to the meeting with the clients on June 3, 1981 Attorney Oddo noticed representatives of Channel 10, a local television station in Providence, Rhode Island who were outside the law offices. Inquiry revealed that they were there to televise the clients as they arrived. When informed of this Attorney Cicilline called the meeting off.

Attorney Oddo also testified concerning the demoralizing effect these events had on the law offices.

■ The court addresses in the first instance the constitutionality of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20. Reference is made to *United States v. Turner*, 528 F.2d 143, 158, 159 (9th Cir. 1975). Certiorari Denied December 1, 1975. See 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371. In this case, the appellants argued that, Title III "on its face" permits an invasion of home and office by general warrant, contrary to the command of the Fourth Amendment and the penumbral right of privacy cast by several amendments.

Nine circuits have passed on the constitutionality of Title III. See *United States v. Sklaroff*, 506 F.2d 837, 840 (5th Cir.), petition for cert. filed, 43 U.S.L.W. 3540 (U.S. Mar. 2, 1975) (No. 74–1249); *United States v. Ramsey*, 503 F.2d 524, 526–31 (7th Cir. 1974), cert. denied, 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975). *United States v. Martinez*, 498 F.2d 464, 467–68 (6th Cir.), cert. denied, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 654 (1974); *United States v. James, supra*, 494 F.2d [1007] at 1012–13 [D.C.D.C.]; *United States v. Tortorello*, 480 F.2d 764, 771–75 (2d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Bobo*, 477 F.2d 974, 978–82 (4th Cir. 1973); cert. denied sub nom., *Gray v. United States*, 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975); *United States v. Whitaker*, 474 F.2d 1246 (3d Cir. 1973), rev'g, 343 F.Supp. 358 (E.D.Pa. 1972), cert. denied, 412 U.S. 950 [953], 93 S.Ct. 3014 [3003], 37 L.Ed.2d 1003 [1006] (1973); *United States v. Cafero*, 473 F.2d 489, 493–501 (3d Cir. 1973), cert. denied, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974); *United States v. Cox, supra*, 462 F.2d at 1302–04; *United States v. Cox*, 449 F.2d 679, 683–87 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32

L.Ed.2d 136 (1972). All have held the statute constitutional under the Fourth Amendment. In many of these cases extended consideration has been given to *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1966), and to the safeguards there discussed and held to be essential under the Fourth Amendment. The courts have all concluded that once those specified safeguards are met, the requirements of the Fourth Amendment are also satisfied; that in enacting Title III Congress was aware of the decisions of the Supreme Court in this area and had complied with the standards there set forth.

We agree.

The First Circuit apparently has not passed on the constitutionality of Title III. This court follows the weight of authority as enumerated in *United States v. Turner, supra.*

Plaintiffs also contend that authorization orders from the office of Attorney General were not proper. The Ninth Circuit answered this question in *United States v. Jabara*, 618 F.2d 1319, 1327 (9th Cir. 1980).

An individual or his or her counsel may request for their inspection upon filing a motion, such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. 18 U.S.C. § 2518(8)(d).

The intent of Congress, in requiring the service of the inventory, was to prevent the Government from engaging in electronic surveillance upon an individual without that individual ever learning of it, as is made crystal clear by the legislative history of this section:

The intent of the provision [requiring the inventory] is that the principle of postuse notice will be retained. This provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject. Senate Report No. 1097, 1968 U.S.Code Cong.

& Admin.News, p. 2194. *Application of United States Authorizing Interception of Wire Communications*, 413 F.Supp. 1321, 1327 (E.D.Pa.1976).

The United States District Court for the Eastern District of Louisiana in the case of *In the Matter of the Application For An Order Authorizing Interception of Wire and Oral Communications*, a 1980 case reported in 495 F.Supp. 282 was presented with a somewhat analogous situation as evidenced in this case.

The movants in that case filed a motion to inspect an application and order authorizing interception of wire and oral communications and to inspect recordings and transcripts of intercepted communications. The government opposed the motion on the basis that mover was not entitled to disclosure of the material sought and that such disclosure would severely compromise an ongoing grand jury investigation.

The court at page 284 stated.

We are of the opinion that *in camera* examinations are an appropriate means for resolving a conflict between the need of a party for evidence and the government's claim that disclosure is not in the interests of justice or public security. *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976); *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir., 1978), cert. den'd, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979).

In response to the court's inquiry counsel for the defendant stated that the Grand Jury investigation of the matters involved in this litigation should be completed by November, 1981 less than three months from now.

The circumstances in this case are not as exigent as in the case of *In Re Lochiatto*, 497 F.2d 803 (1st Cir. 1974) where appellants were held in contempt after refusal to answer questions proposed before a special grand jury. The district court refused to examine any of the government documents and denied the defendants' motion for their discovery.

The First Circuit carefully expounded on not accepting as carte blanche prosecutorial say-so as a sufficient guarantee of lawfulness, and striking a practicable balance between statutory rights and the efficient administration of the grand jury.

At page 807 of the opinion is the following.

There is often sensitive material contained in the reports and affidavits; there is a high premium placed on secrecy, often to protect the witnesses; there is the practical necessity of not unduly impeding grand jury proceedings. An absolute requirement of total disclosure of this guarded information could not have been the intent of Congress since the ability of the government to proceed even in the limited circumstances where electronic surveillance is authorized would be severely trammeled. The Supreme Court in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), indicated that a general rule allowing extensive procedural safeguards would seriously impair the progress of the grand jury with "protracted interruptions of . . . [the] proceedings", *Gelbard, [v. U.S.] supra*, 408 U.S. 41, 70 [92 S.Ct. 2357, 2372, 33 L.Ed.2d 179] (White, J., concurring), and might "frustrate the public's interest in a fair and expeditious administration of the criminal law." *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

These policy reasons against complete disclosure, however, do not command a bar against any disclosure. Also to be weighed in the scales is the articulated congressional skepticism about electronic monitoring, as an insidious invasion of privacy to be singled out for special scrutiny and safeguards. It is clear from *Gelbard* that this concern survives passage through grand jury doors. *See Calandra*, 414 U.S. at 346, 355–356 n. 11, 94 S.Ct. 613 [at 623–624]. For example, a defendant in contempt proceedings may raise a § 2518(10)(a) challenge to establish that he has "just cause" to refrain from testifying before a grand jury. Certain limited rights are widely recognized. To the extent that the wiretap evidence itself, which is the basis of the questioning of the witness, cannot substitute for the temporary removal of the witness, some delay necessarily follows. But the affected individual has much at stake. To be sure, the threat of incarceration is not inevitable; if the defendant is unsuccessful in his challenge, he may avoid imprisonment by giving testimony. But we read the statutory scheme as giving a witness the right to avoid a Hobson's choice between jail and testimony by mounting at least a limited challenge which, like a declaratory judgment, can clarify his rights before he risks sanction.

The triple objective, then, is to minimize the delay, secure the government's interest, if any, in secrecy, and protect a defendant's right to assert the defenses Congress established.

In reversing the orders of the District Court and remanding the cases for proceedings consistent with its opinion the following directions were given to the trial court at page 808.

If the government does not object upon grounds of harm due to breach of secrecy, the defendant is entitled to access to these materials in order to develop his defenses. If the government interposes an objection on secrecy grounds, the district court must determine whether the secret information can be successfully deleted or summarized and access to the excerpted material granted. Cf. 18 U.S.C. § 3500; *United States v. Picard*, 464 F.2d 215, 220 (1st Cir. 1972). If the district judge, in his discretion, determines that so much of the material is of a sensitive nature that revelation of any of it would prejudice the government, the court must then review this material in camera to determine the constitutional and statutory validity of the application and the court order based on the warrants, and compliance by the government with the court ordered time limits on surveillance. This approach vests the district court with wide discretion.

It is pristine that it is incumbent upon this court through the mandates of *In Re Lochiatto*, supra, to determine whether the secret information can be successfully deleted or summarized and access to the excerpted material granted. This does not mean that the court shall hold in abeyance its ruling relating to the attorney-client privilege pending listening to the electronic monitoring.

Under the unique facts of this case one cannot separate the order authorizing interception of oral communications and the attorney-client relationship.

There are a potpourri of constitutional and common law rights and privileges which are sacrosanct. In other words, there is a meld or interweaving of innate or fundamental rights guaranteed by the United States Constitution and rights derived from the Magna Carta.

The application for an order authorizing the interception of oral communications is a detailed, prolix sixty-four page document reciting a litany of alleged malfeasance which is mind boggling to the neophyte not conversant with organized crime.

The locations which were sought to be monitored by means of oral interception devices were the office of Nicholas L. Bianco and Attorney John F. Cicilline. Reference is made to H3 of said application showing the location of DeCaporale's, Ruggiero's, Cicilline's and Bianco's offices.

Quoting from the affidavit is the following additional information.

This application requests authorization to place electronic eavesdropping devices only in that part of the law offices utilized by John F. Cicilline, Raymond L. S. Patriarca, Raymond J. Patriarca, Nicholas L. Bianco, Anthony St. Laurent, Gerard T. Ouimette and others as yet unknown. Therefore, it is unlikely that any conversations with Joseph DeCaporale or James Ruggiero will be intercepted with the possible exception of social amenities. DeCaporale's and Ruggiero's law offices are on the opposite side of the building from where the electronic eavesdropping devices will be placed and consequently the possibility of the interception of privileged communications between DeCaporale or Ruggiero and their clients is remote.

Chief Judge Raymond J. Pettine was circumspect in issuing his order authorizing interception of oral communications as evidenced by the following excerpt from said order.

In the event that the authorized electronic surveillance intercepts a communication between an attorney and client which is privileged, the monitoring shall cease immediately and the substance of the overheard conversation shall be put on a separate log and sealed by the court. The fact of such monitoring shall be reported to the supervising attorney with the Organized Crime and Racketeering Section of the United States Department of Justice as soon as practicable. Furthermore, such information shall not be disseminated to any other law enforcement agency nor shall the Federal Bureau of Investigation conduct further investigation based upon the contents of the privileged communication. Such privileged conversations shall not be included in the copies of the tapes retained by the Federal Bureau of Investigation. The conversations shall be recorded on the original tape that will be sealed by and remain in the custody of the court. Any such interception shall be reported to the court on the next business day following the interception.

Nicholas L. Bianco is not an attorney. He allegedly at the time of the application was on probation after having been convicted of income tax evasion. He is allegedly employed as a paralegal by Attorney Cicilline.

The court meets head on the issue relative to the electronic surveillance of the law offices of Attorney Cicilline.

In *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) the court stated that the defendant was not deprived of his right to counsel under the Sixth Amendment, which does not establish a per

se rule forbidding an undercover agent to meet with a defendant's counsel.

This court wholeheartedly concurs with the following language of Justices Marshall and Brennan as it applied to the facts in *Weatherford v. Bursey, supra.*

There are actually two independent constitutional values that are jeopardized by governmental intrusion into private communications between defendants and their lawyers. First, the integrity of the adversary system and the fairness of trials is undermined when the prosecution surreptitiously acquires information concerning the defense strategy and evidence (or lack of it), the defendant, or the defense counsel.

Of equal concern, governmental incursions into confidential lawyer-client communications threaten criminal defendants' right to the effective assistance of counsel. Only last Term we held that the right to counsel encompasses the right to confer with one's lawyer. *Geders v. United States*, 425 U.S. 80 [96 S.Ct. 1330, 47 L.Ed.2d 592] (1976). See also *Reynolds v. Cochran*, 365 U.S. 525, 531 [81 S.Ct. 723, 726, 5 L.Ed.2d 754] (1961); *Hawk v. Olson*, 326 U.S. 271, 278 [66 S.Ct. 116, 120, 90 L.Ed. 61] (1945); *Avery v. Alabama*, 308 U.S. 444, 446 [60 S.Ct. 321, 322, 84 L.Ed. 377] (1940); *Powell v. Alabama*, 287 U.S. 45, 57 [53 S.Ct. 55, 59, 77 L.Ed. 158] (1932). But "[a]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult *to* obtain fully informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403 [96 S.Ct. 1569, 1577, 48 L.Ed.2d 39] (1976). See also *United States v. Nobles*, 422 U.S. 225, 238–239 [95 S.Ct. 2160, 2170, 45 L.Ed.2d 141] (1975). For this reason, it has long been recognized that "the essence of the Sixth Amendment right is . . . privacy of communication with counsel." *United States v. Rosner*, 485 F.2d 1213, 1224 (CA2 1973), cert. denied, 417 U.S. 950 [94 S.Ct. 3080, 41 L.Ed.2d 672] (1974). See, e. g., *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953); *Coplon v. United States*, 89 U.S. App.D.C. 103, 191 F.2d 749 (1951); *Louie Yung v. Coleman*, 5 F.Supp. 702, 703 (Idaho 1934); cf., e. g., *In re Rider*, 50 Cal. App. 797, 195 P. 965 (1920); *Thomas v. Mills*, 117 Ohio St. 114, 157 N.E. 488 (1927); *State ex rel. Tucker v. Davis*, 9 Okl.Cr. 94, 130 P. 962 (1913); *Turner v. State*, 91 Tex.Crim. 627, 241 S.W. 162 (1922); Annot., 5 A.L.R.3d 1360 (1966).

Unlike the informer in *Weatherford v. Bursey, supra*, the wiretap was an unwanted uninvited guest in this case.

Counsel for the defendant in its supplementary response cites the recently decided case, May 13, 1981, *United States v. Civella*, 648 F.2d 1167, 1169 (8th Cir. 1981). This court has read this case and this issue cannot be discerned from the facts or from the propositions of law ruled on by the 8th Circuit.

*United States v. King*, 335 F.Supp. 523, 545, 546 (S.D.Cal.1971), 478 F.2d 494 (9th Cir. 494), modified on appeal, cert. denied 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 involved multiple defendants. One was Attorney Vesco who moved to suppress wiretap evidence on the ground that the surveillance involved an intrusion into the lawyer-client relationship protected by the Sixth Amendment.

District Court Judge Neilsen stated.

It is clear that the attorney-client privilege encompasses more than merely those conversations which involve a "pending criminal case". It protects confidential communications between attorney and client made because of their professional relationship, and it is designed to insure confidence, and complete disclosure between them. *United States v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964), cert. denied 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964); *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960).

However, in this case defendant Vesco, who is an attorney, was himself indicted as a member of the alleged smuggling

conspiracy now before this Court. In such a situation, the privilege does not apply for several reasons. First, the attorney-client privilege is for the protection of the client and not the attorney. *Baldwin v. Commissioner of Internal Revenue*, 125 F.2d 812 (9th Cir. 1942); *United States v. Kahn*, 251 F.Supp. 702 (S.D.N.Y.1966). Second, communications between attorney and client which concern illegal activities in progress or yet to be performed are not offered the shield of privilege. *Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *United States v. Hoffa*, 349 F.2d 20 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Sawyer v. Barczak*, 229 F.2d 805 (7th Cir. 1956), cert. denied, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956); *United States v. Weinberg*, 226 F.2d 161 (3rd Cir. 1955), cert. denied, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956). Third, when the attorney himself is allegedly involved in the illegal activities, the relationship is not even one of attorney and client. The claim to privilege is thus even further attenuated. *Hett v. United States*, 353 F.2d 761 (9th Cir. 1966), cert. denied, 384 U.S. 905, 86 S.Ct. 1339, 16 L.Ed.2d 358 (1966). See also *Morgan v. United States*, 380 F.2d 686 (9th Cir. 1967); *Olender v. United States*, 210 F.2d 795 (9th Cir. 1954).

This Court sees no reason to suppress the wiretap on this basis, and defendant Vesco's motion is therefore denied. I do wish to reiterate, however, that if at trial the Government seeks to introduce evidence which may be considered a real intrusion into a bona fide lawyer-client relationship, this Court will sustain an objection on that ground.

The Ninth Circuit reversed the convictions of all defendants excepting defendants, Light and Pope.

The Ninth Circuit never addressed the issue of attorney-client privilege as the reversal of Vesco's and other defendant's conviction was based on an improper wiretap.

In very strong language, the appeals court in *U.S. v. King*, stated.

Concern for the evils of crime is increasing in the United States, and not without justification. However, in such times it is especially important that the law not be bent in the name of expediency, especially not by the highest law enforcement official in the land. The words of Justice Brandeis, written over forty years ago, sound a warning which must be repeated:

"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."

*Olmstead v. United States*, 1928, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (Brandeis, J., dissenting).

A close perusal of *U.S. v. King, supra,* does not disclose a factual situation where Attorney Vesco's office was bugged or subject to electronic surveillance.

■ It is universally accepted that effective representation cannot be had unless a defendant has the right to confer with his counsel in private. *State v. Cory*, 62 Wash.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352.

*Coplon v. United States*, 89 U.S.App.D.C. 103, 191 F.2d 749, cert. den., 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 involved the interception of telephone conversations between

the defendant and her attorney through wiretapping.

Quoting from *Coplon v. United States, supra* at page 758. "The sanctity of the constitutional right of an accused privately to consult with counsel is generally recognized and zealously enforced by state as well as federal courts."

The court in *Coplon v. United States, supra* at page 759.

The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel. We consider it equally true that a defendant and his lawyer have a right to talk together by telephone without their conversations being monitored by the prosecution through a secret mechanical device which they do not know is being used.

In this case law enforcement officers followed procedural outlines set forth in the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20. As stated, the trial judge in issuing the authorization took extreme caution to negate monitoring of privileged communications between attorney and client.

■ Regardless this court considers the electronic surveillance of an attorney's office even though he allegedly was considered engaged in criminal activity with other individuals as the quietus to the attorney-client privilege.

A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary.

*McNabb v. United States,* 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1942).

Accordingly the court rules that the electronic surveillance was illegal.

The plaintiffs in their request for relief have asked this court for the following relief.

Any indictments, Grand Jury proceedings, or other investigation directed against movants which may result from the bugging of their attorneys' offices are to be considered *per se* invalid.

The interests of justice impose an affirmative duty of this Court to facilitate litigation by movants which will (1) remedy past constitutional and statutory violations; (2) secure their future right to consult with their attorneys free from the threat of electronic surveillance; and (3) re-affirm for all lawyers and clients the basic principles of attorney-client confidentiality.

Additionally, plaintiffs claim that the application for electronic surveillance is insufficient on its face.

Plaintiffs request that an inquiry should be held by this court concerning the alleged leakage to Channel 10 Television Station, Providence, Rhode Island.

The court rules as follows.

■ Defendant's position at the hearing on July 22, 1981 was that the Grand Jury would be in session until November, 1981. As far as the court is aware, indictments at this time secret or otherwise have not been returned against any of the plaintiffs.

The relief requested is also premature as the court has not had the opportunity to hear the tapes as mandated in *Re Lochiatto, supra.* Request to quash actual or putative indictments is denied at this time subject, if the facts so warrant to be renewed at the apposite time.

The court will not rule on a request to facilitate civil litigation by the plaintiffs at this time where complaints have not been filed.

■ The defendant is enjoined from interfering with plaintiff's right to consult with counsel in any manner whatsoever.

The court's opinion adequately covers the attorney-client privilege without the necessity of re-affirmance.

The court refuses to rule on the issue of the insufficiency of the electronic surveillance on its face in view of its ruling as to its illegality as it pertains to these plaintiffs on the basis of the attorney-client relationship.

Plaintiff's request for inquiry as to the alleged impropriety of dissemination of information germane to the electronics surveillance to the media are not within the jurisdiction of this court.